FILED
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO.:

WKS  8:09CV00087T26
TBM

1:09-mc-5

SECURITIES AND EXCHANGE
COMMISSION,

   Plaintiff,

v.

ARTHUR NADEL,
SCOOP CAPITAL, LLC,
SCOOP MANAGEMENT, INC.

   Defendants,

SCOOP REAL ESTATE, L.P.,
VALHALLA INVESTMENT PARTNERS, L.P.,
VALHALLA MANAGEMENT, INC.,
VICTORY IRA FUND, LTD,
VICTORY FUND, LTD,
VIKING IRA FUND, LLC,
VIKING FUND, LLC, AND
VIKING MANAGEMENT, LLC

   Relief Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges and states as follows:

### I. INTRODUCTION

1. The Commission brings this emergency action to halt an ongoing fraud by Arthur G. Nadel and two investment management companies he controls, Scoop Capital, LLC and Scoop Management, Inc. ("Defendants"). The fraud concerns six hedge funds: Scoop Real Estate, L.P, Valhalla Investment Partners, L.P., Victory IRA Fund, Ltd, Victory Fund, Ltd, Viking IRA Fund, LLC, and Viking Fund, LLC; and two other investment management

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida.
BY: _____
Deputy Clerk

companies, Valhalla Management, Inc. and Viking Management. The latter eight entities are collectively referred to as Relief Defendants.

2. From at least January 2008 through the present, the Defendants, who provide investment advice to Scoop Real Estate, Valhalla Investment Partners, Victory IRA Fund, Victory Fund, Viking IRA Fund, and Viking Fund (collectively the "Hedge Funds") have issued materially false and misleading account statements to the Hedge Funds' investors. The false account statements overstated the value of investments in the Funds by approximately $300 million.

3. The Defendants have also massively overstated the Hedge Funds' historical investment returns and the value of their assets in account statements provided to investors.

4. Nadel, the Hedge Funds' principal investment advisor, provided fraudulent balances and values to others associated with the Hedge Funds knowing they would be used to create false investor account statements.

5. At the same time he was deceiving investors, Nadel maintained secret bank accounts, which only he controlled, in the names of at least two of the Hedge Funds. He recently transferred $1.25 million from the Viking IRA Fund and Valhalla Investment Partners to one of the secret accounts.

6. By causing the Hedge Funds to issue materially false statements to investors that tremendously exaggerated the value of their investments, the Defendants violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C §78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §240.10b-5.

7. To halt the ongoing fraud, maintain the status quo, and preserve investor assets, the Commission seeks various forms of equitable relief against the Defendants, including a temporary restraining order, preliminary injunctions, permanent injunctions against future violations of the federal securities laws, disgorgement plus pre-judgment interest, and civil penalties.

8. Based on the ongoing nature of their violations and the scienter the Defendants have demonstrated through their willful and wanton disregard for the federal securities laws, the Defendants have shown they will continue to violate the law unless the Court grants the injunctive and other relief the Commission seeks.

## II. DEFENDANTS AND RELIEF DEFENDANTS

9. Defendant Nadel, 76, is a resident of Sarasota, Florida and one of the owners of Scoop Capital and Scoop Management. He is the sole officer and director of Scoop Management and the sole managing member of Scoop Capital. At all relevant times, he provided investment advice to the Hedge Funds, was responsible for the Hedge Funds' trading activities, and provided the account values included in investor account statements for the Hedge Funds. Nadel received compensation through the fees charged to the Hedge Funds for management and investment advice.

10. Defendant Scoop Capital is a Florida limited liability company organized on June 28, 2001, with its principal place of business in Sarasota, Florida. Nadel is the sole managing member of Scoop Capital. Nadel and his wife are the principals of Scoop Capital.

11. Defendant Scoop Management is a Florida corporation incorporated on April 17, 2001, with its principal place of business in Sarasota, Florida. Nadel is the President, Secretary and a Director of Scoop Management.

12. Relief Defendant Scoop Real Estate is a Delaware limited partnership formed on October 15, 2003. Scoop Capital is its general partner.

13. Relief Defendant Valhalla Investment Partners is a Delaware limited partnership formed on October 15, 2003. Valhalla Management is its general partner, and its principal place of business is Sarasota, Florida.

14. Relief Defendant Valhalla Management is a Florida corporation organized on February 16, 1999, with its principal place of business is Sarasota, Florida.

15. Relief Defendant Victory IRA Fund is a Florida limited partnership formed on April 3, 2003, with its principal place of business in Sarasota, Florida. Scoop Capital is the general partner of Victory IRA Fund.

16. Relief Defendant Victory Fund is a Florida limited partnership formed on May 1, 2005, with its principal place of business in Sarasota, Florida. Scoop Capital is the general partner of Victory Fund.

17. Relief Defendant Viking IRA Fund is a Florida limited liability company organized on March 27, 2001, with its principal place of business in Sarasota, Florida. Viking Management is its sole managing member.

18. Relief Defendant Viking Management is a Florida limited liability company organized on May 21, 2001, with its principal place of business in Sarasota, Florida.

19. Relief Defendant Viking Fund is a Florida limited liability company organized on March 23, 2001, with its principal place of business in Sarasota, Florida. Viking Management is its sole managing member.

## III. JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to Sections 21(d) 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

21. This Court has personal jurisdiction over the Defendants and Relief Defendants, and venue is proper in the Middle District of Florida, because the Defendants and Relief Defendants' principal places of business are in Sarasota. Additionally, Nadel resides in Sarasota and has conducted the Defendants' and Relief Defendants' business in Sarasota. Thus, the conduct constituting the fraud alleged in this Complaint has occurred in the Middle District.

22. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV. FACTS

23. Nadel and the two other Defendants have managed the Hedge Funds since 1999.

24. In 2003, Scoop Capital formed Scoop Real Estate to acquire interests in residential, commercial, office and industrial real estate properties. Scoop Capital has been responsible for managing that Hedge Fund's portfolio and its day-to-day operations, with Nadel responsible for its investment decisions.

25. In 2005, Scoop Capital formed Victory IRA Fund and Victory Fund. The investment objective of these two Funds has been to invest or trade in securities.

26. The Defendants have offered and sold limited partnership interests in Scoop Real Estate, Victory IRA Fund and Victory Fund through multiple offerings.

5

27. According to private placement memoranda ("PPMs") for Scoop Real Estate, Victory IRA Fund and Victory Fund, Scoop Capital has been responsible for managing those Hedge Funds' portfolios and their day-to-day operations. Nadel has been responsible for all the Hedge Funds' investment decisions.

28. The Victory IRA Fund and Victory Fund PPMs tout Scoop Management's proprietary trading systems and extensive market research.

29. The PPMs state those two Hedge Funds will pay quarterly management fees to Scoop Capital and Scoop Management, based on a percentage of those funds' net assets.

### A. Valhalla Investment Partners, Viking Fund, and Viking IRA Fund

30. In 1999, Valhalla Management formed Valhalla Investment Partners to invest in and/or trade in securities.

31. In 2001, Viking Management formed Viking IRA Fund and Viking Fund to invest and/or trade in the securities of medium to large cap companies.

32. The Defendants have offered and sold limited partnership and membership interests in Valhalla Investment Partners, Viking IRA Fund and Viking Fund through multiple offerings.

33. According to the PPMs, Viking Management and Valhalla Management were responsible for all of the investment decisions for their respective Hedge Funds. However, the PPMs also state that Viking Management and Valhalla Management rely on the investment advice of Scoop Management, or that the Funds' investments will be made in accordance with trading signals and other principles Scoop Management developed.

34. More specifically, the PPMs state Scoop Management will provide trading signals, market data, computer investment and trading programs, technical and fundamental

6

research, and entry of trades for the Hedge Funds. Scoop Management also is expected to provide Viking Management and Valhalla Management with office management and technical services in connection with those Funds' operations, including the use of office space, facilities, and bookkeeping.

35. According to the PPMs, the Hedge Funds will pay Valhalla Management and Viking Management a management and performance fee, and Scoop Management a monthly advisory fee of $5,000. The PPMs also state Valhalla Management and Viking Management will share their management and performance fee with Scoop Management.

### B. Misrepresentations to the Funds' Investors Concerning the Value of the Funds' Assets

36. For at least the last year, the Defendants have materially misrepresented the value of the Hedge Funds' assets to investors. For example, the Hedge Funds' internal books and records – used to provide false account statements to investors – indicate the value of their assets exceeds $300 million. In fact, the actual value of the Hedge Funds' assets is only about $506,000.

37. As of mid-January 2009, the account values for the six Hedge Funds were as follows: (a) **Victory Fund** – securities worth $1,901.31 and cash of $78,764.37; (b) **Scoop Real Estate** – securities worth $2,119.81 and cash of $122,830.40; (c) **Viking IRA Fund** – securities worth $2,923.58 and cash of $77,025.20; (d) **Viking Fund** – securities worth $917.70 and cash of $65,708.33; (e) **Valhalla Investment Partners** – securities worth $4,413.66 and cash of $16,158.05; and (f) **Victory IRA Fund** – securities worth $2,938.86 and cash of $131,139.52.

38. Thus, the total value of the Hedge Funds' securities holdings as of January 14, 2009 was only $15,214.92, and the cash on hand was only $491,625.87.

39. The Defendants have grossly misrepresented to investors the value of their investments in the Hedge Funds by providing them false account statements that Nadel directed.

40. In particular, one investor from Virginia who invested in the Victory IRA Fund received a statement for October 2008 indicating his investment was valued at $599,551.55, and a November 2008 statement indicating his investment was valued at $602,965.39. This same investor made a second investment in Victory IRA Fund through another account and subsequently received an October 2008 statement indicating this investment was valued at $172,354.07, and a November 2008 statement indicating this investment was valued at $173,335.45. These statements were false because the *total* value of the entire Victory IRA Fund's holdings was only $2,938.86 at the end of October and November 2008.

41. This same investor also invested in Scoop Real Estate. He received account statements for October 2008 indicating his investment in Scoop Real Estate was valued at $586,862.54, and a November 2008 statement indicating the value of his investment was $590,321.18. These statements were false because Scoop Real Estate's entire holdings were only worth $8,088.35 at the end of October and $198,224.13 at the end of November 2008.

42. This investor's wife also made two separate investments in the Victory IRA Fund and received statements for October and November 2008 which grossly misrepresented the value of her investments.

43. She also invested in Victory Fund and received an account statement for November 2008 which misrepresented the value of her investment in this fund as worth $419,824.89. The November 2008 account statement was false because Victory Fund's entire holdings were worth only $91,823.49 at the end of November 2008.

8

### C. Misrepresentations in the Offer or Sale of the Hedge Funds' Securities

44. In addition to misrepresenting to the Funds' investors the value of their investments, the Defendants have prepared, approved and disseminated offering materials to prospective investors that materially misstate the Funds' yearly historical returns and the total capital invested in the Funds.

45. In particular, the offering materials for the Viking Fund, the Viking IRA Fund, and the Victory Fund represent those Funds had approximately $342 million in capital as of November 30, 2008. In fact, the total value of those Funds' assets as of that date was only $963,123.85.

46. The offering materials also represent that the Funds generated investment returns ranging from 10.97% to 11.82% between January and November of 2008. In fact, these claimed returns were utterly bogus. At least three of the funds lost money on their investments from January through November, and a fourth reported lower returns.

### COUNT I

### Fraud in Violation of Section 10(b) of the Exchange Act and Rule 10b-5

47. The Commission repeats and realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. From at least January 2008 through the present, the Defendants, directly or indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly have: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were

made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

49. By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5.

## COUNT II

### Fraud in Violation of Section 17(a)(1) of the Securities Act

50. The Commission repeats and realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

51. From at least January 2008 through the present, the Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstates commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, have knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

52. By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. §77q(a)(1).

## COUNT III

### Fraud in Violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act

53. The Commission repeats and realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

54. From at least January 2008 through the present, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate

commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint have: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

55. By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§77q(a)(2) and 77q(a)(3).

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests the Court:

### I. Declaratory Relief

Declare, determine and find that the Defendants committed the violations of the federal securities laws alleged in this Complaint.

### II. Permanent Injunction

Issue a Permanent Injunction, enjoining the Defendants, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5.

### III. Asset Freeze

Issue an Order freezing the assets of all Defendants and Relief Defendants until further Order of the Court.

## IV. Appointment of a Receiver

Issue an Order appointing a Receiver over all assets held in the name of the Defendants (other than Nadel) and Relief Defendants to (1) preserve the status quo, (2) ascertain the financial condition of each of the Defendant and Relief Defendant entities, (3) prevent further dissipation of the property and assets of each of the Defendant and Relief Defendant entities, to prevent loss, damage and injury to investors, (4) preserve the books, records and documents of each of these Defendant entities and Relief Defendant entities, and (5) be available to respond to investor inquiries.

## V. Disgorgement

Issue an Order directing the Defendants and the Relief Defendants to disgorge all profits or proceeds that they received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## VI. Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## VII. Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VIII. Retention of Jurisdiction

Further, the Commission respectfully requests the Court to retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

January 21, 2009

Respectfully submitted,

By: *[signature: Scott Masel]*

Scott Masel
Senior Trial Counsel
Florida Bar No. 0007110
Telephone: (305) 982-6398
Facsimile: (305) 536-4154
masels@sec.gov
*Lead and Trial Counsel*

Andre Zamorano
Senior Counsel
Florida Bar No. 0967361
Telephone: (305) 982-6324
Facsimile: (305) 536-4154
zamoranoa@sec.gov.

Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131

I certify that the foregoing is a true and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida.
BY: _____
Deputy Clerk